{¶ 42} In this case, the majority overturns the lower court's termination of appellant Dwayne M. Bentley's parental rights over Casondra and Bridgette Bentley. Dwayne's physical and sexual abuse of these children, acknowledged in the majority's opinion, confirms the guardian ad litem's recommendation that Casondra and Bridgette should have absolutely no contact, let alone reunification, with this man. Nevertheless, the majority would overturn the termination of this sexual abuser's parental rights on solely technical and esoteric grounds. Accordingly, I dissent.
 {¶ 43} R.C. 2151.414, governing the termination of parental rights, provides that the court may grant permanent custody of a child that has been in the temporary custody of a public children services agency for at least twelve months to that children services agency "if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency." R.C. 2151.414(B)(1).
 {¶ 44} R.C. 2151.414 further provides that "[i]n determining the best interest of a child * * * the court shall consider * * * the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, * * *, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem * * *; (3) The custodial history of the child * * *; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 45} Under a plain reading of this statute, Dwayne's parental rights may be terminated if the court (1) considers the five factors listed in R.C. 2151.414(D) and (2) finds by clear and convincing evidence that it is in Cosandra's and Bridgette's best interests to do so.
 {¶ 46} These statutory requirements have been met in this case. Both the trial court and the magistrate state that the R.C. 2151.414(D) factors have been considered. The following evidence and findings are undisputed.
 {¶ 47} In regards to the second R.C. 2151.414(D) factor, the guardian ad litem's report stated as follows: "Both girls wish to have a permanent home and would like to return to their mother but realize that the mother has many issues to resolve before this could happen. Both girls want to live with a family and have a permanent home. There is a maternal uncle who is willing to step up and assume custody of the children and would want to adopt them instead of assuming legal custody. Both girls have indicated that this is something they would also consider and like to happen."
 {¶ 48} In regards to the fourth R.C. 2151.414(D) factor, the Bentley family's caseworker testified that both girls need a legally secure permanent placement and that this goal cannot be achieved without a grant of permanent custody: "The girls have a lot of history of being physically abused, sexually abused, neglected by both parents, * * * I don't feel it would be in the children's best interests not to get a grant of permanent custody because they deserve permanency and we have a relative who's willing to adopt both girls at this time."
 {¶ 49} In regards to the fifth R.C. 2151.414(D) factor, the magistrate found that Dwayne is incarcerated for the rape of one of his children and that the mother is unwilling to provide food, clothing, shelter, or other basic necessities for the children. The magistrate also noted that Dwayne has not visited his children since their removal by children services and that Dwayne did not attempt to contact children services regarding this case until after his arrest for rape. These findings fairly correspond to R.C. 2151.414(E)(7)(c), whether a parent has been convicted or pled guilty to the crime of rape against his child, and R.C. 2151.414(E)(8), whether a parent has repeatedly withheld food and medical treatment from the child.
 {¶ 50} Despite this testimony that the R.C. 2151.414(D) factors were duly considered, the majority reverses the lower court because the court's judgment entry does not "discuss" these factors. Although the requirement that a juvenile court discuss the R.C. 2151.414(D) factors in its judgment entry is found nowhere in the statute, the majority relies on case law, peculiar to this court, that "[t]he failure to discuss each of the R.C. 2151.414(D) factors when reaching a determination concerning the best interest of the child constitutes prejudicial error." As a practical matter, this means that a juvenile court's judgment entry must analyze each of the factors individually in check-list fashion. The juvenile court must also provide substantive discussion for every single factor irrespective of the weight or relevance of those factors to the court's decision. The failure of a court to engage in this extra-statutory exercise results, as this case demonstrates, in an automatic reversal.
 {¶ 51} In the present case, the magistrate discussed, for five pages, her reasons for terminating Dwayne's parental rights and granting permanent custody to children services. The discussion details Dwayne's current incarceration for raping his daughter, Dwayne's failure to even attempt to comply with the case plan or make contact with his children, Casondra's institutionalization as a result of sexual abuse, Bridgette's placement with a maternal uncle who desires to adopt both children, Casondra's and Bridgette's good relationship with each other, and their desire to be placed together. Admittedly, the magistrate's discussion is tailored more to the facts of this case, rather than the language of the statute. Nonetheless, the decision demonstrates that the magistrate considered the required factors and exercised independent judgment in evaluating them.
 {¶ 52} Clear and convincing evidence on every R.C. 2151.414(D) factor was before the court. This evidence is sufficient to support the juvenile court's decision. There is no need for further hearings.
 {¶ 53} Finally, the majority does not address the merits of Dwayne's appeal at this time. Once this case is remanded and the juvenile court amends its judgment entry to include the mechanical analysis of R.C.2151.414(D)(2), (4), and (5) prescribed by the majority, Dwayne will be able to reinitiate the whole appeal process in order to seek review of the merits. This will merely prolong an inevitable result at the expense of Casondra's and Bridgette's need for legally secure placement.
 {¶ 54} For these reasons, I would affirm the decision of the Ashtabula County Court of Common Pleas, Juvenile Division.